J-A22030-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMAL DUBLIN, | : | |
| | : | |
| Appellant | : | No. 2560 EDA 2018 |

Appeal from the PCRA Order Entered July 30, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0610771-2002

BEFORE:  MURRAY, J., STRASSBURGER, J.* and PELLEGRINI, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 06, 2019**

Jamal Dublin (Appellant) appeals from the July 30, 2018 order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Upon review, we affirm.

On May 2, 2002, at approximately [1:00] a.m., Appellant and his co-defendant, Jabbar Wilkerson (Wilkerson), entered a bar at the corner of Frankford Avenue and Clearfield Street in the Kensington section of Philadelphia.  According to the testimony of one of the Commonwealth's eyewitnesses, Lynell Ragland, Appellant was involved in a drug transaction inside the bar that prompted the owner to ask Appellant to leave.  When [] Ragland attempted to discuss the situation with Appellant, an argument ensued between the two men.

As [Appellant and Ragland] left the bar, along with Wilkerson, they continued to argue on the street right outside of the bar.  The argument escalated and threats were made against [] Ragland.  Appellant said to [] Ragland that he would shoot him.  At that point, Appellant and Wilkerson got into Wilkerson's car and left the area.  They returned about five minutes later, got out of the car, and Appellant resumed his heated argument with [] Ragland on the same corner in front of the bar.

* Retired Senior Judge assigned to the Superior Court.

Wilkerson then said to Appellant, "Give me the gun." Appellant did not reply, but continued arguing with [] Ragland before he started walking towards the car in which he had been riding earlier. [] Ragland followed him [] where he observed him attempting to open the trunk of the car. As [] Ragland continued to approach the car, Appellant turned around and closed the trunk of the car. The argument continued, but the two men were now at the rear of the car, and Appellant was sitting on the curb.

[] Ragland eventually went back to the corner where the bar was located, and he saw Appellant open the trunk again. This time, [] Ragland testified that he saw [Appellant] take out a handgun from the trunk and put it into his waistband. Both Appellant and Wilkerson got back in the car and drove up to the corner. Appellant was now driving the car, and, when he got to the corner, he asked [] Ragland to come over to the car. [] Ragland refused this request.

Appellant then backed the car into the parking space where it was originally located at the time the argument first began. Appellant stayed in the car, and Wilkerson got out and walked over to the corner. He immediately started shooting in [] Ragland's direction, and he shot [] Ragland in the leg. As [] Ragland ran back inside of the bar, he saw Appellant drive the car to the corner and pick up Wilkerson. The car then proceeded down Frankford Avenue.

When [] Ragland came back out of the bar, he saw the deceased, John Freeman, lying on the ground. He jumped in a car with some friends to pursue Appellant and Wilkerson, but he saw eventually that the police had pulled Appellant and Wilkerson over. [] Ragland was able to communicate to the police who had arrested Appellant and Wilkerson that they were the two individuals who were responsible for the shooting that had just taken place.

*Commonwealth v. Dublin*, 873 A.2d 766 (Pa. Super. 2005) (unpublished memorandum at 1-3) (original brackets and citation omitted). During transport following his arrest, police observed a clear baggie containing 21

packets of crack cocaine fall from Appellant's person. *Id.* (unpublished memorandum at 3) (citation omitted).

Appellant was charged with numerous crimes related to this incident and proceeded to a non-jury trial. At the conclusion of the trial, the trial court found Appellant guilty of third-degree murder, criminal conspiracy, aggravated assault, simple assault, possession of an instrument of crime, recklessly endangering another person (REAP), and manufacture or delivery of a controlled substance. The trial court found Appellant not guilty of attempted murder, intimidation of a witness, and one count of REAP. On April 30, 2003, the trial court sentenced Appellant to an aggregate term of 15 to 30 years of incarceration, followed by 30 years of probation.

On direct appeal, this Court found the evidence sufficient to sustain Appellant's convictions of third-degree murder, conspiracy to commit third-degree murder, and aggravated assault, and found his weight-of-the-evidence claim waived. However, because the trial court had sentenced Appellant to probation for intimidation of a witness, a crime to which Appellant had been found not guilty, this Court vacated Appellant's judgment of sentence and remanded for resentencing. *Id.* (unpublished memorandum at 12-14). On remand, the trial court resentenced Appellant to an aggregate term of 15 to 30 years of incarceration, followed by 25 years of probation.

Appellant *pro se* timely filed a PCRA petition, seeking, *inter alia*, permission to file a petition for allowance of appeal to our Supreme Court

*nunc pro tunc*. Counsel was appointed and counsel filed an amended PCRA petition. On June 17, 2009, the PCRA court granted Appellant's petition, but appointed counsel failed to file the petition for allowance of appeal. As such, Appellant *pro se* filed another PCRA petition on August 23, 2010. The PCRA court again appointed counsel and granted Appellant's PCRA petition. New counsel filed a petition for allowance of appeal *nunc pro tunc*, which was denied by our Supreme Court on November 8, 2012. **Commonwealth v. Dublin**, 56 A.3d 396 (Pa. 2012).

Appellant *pro se* filed the instant PCRA petition on June 20, 2013. Counsel was appointed and filed an amended petition on September 8, 2017. In his petition, Appellant raised two claims: after-discovered evidence of Ragland's recantation and ineffective assistance of trial counsel for failing to cross-examine Ragland adequately. Amended PCRA Petition, 9/8/2017, at 3. The Commonwealth filed a motion to dismiss. On June 1, 2018, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing, pursuant to Pa.R.Crim.P. 907, because the claims were without merit and previously litigated. Appellant did not file a response, and on July 30, 2018, the PCRA court dismissed Appellant's PCRA petition.

This timely-filed notice of appeal followed.[1] On appeal, Appellant claims that the PCRA court erred in dismissing without a hearing his claims

_____

[1] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. Appellant *pro se* filed his own Pa.R.A.P. 1925(b) statement. Because
*(Footnote Continued Next Page)*

of after-discovered evidence and ineffective assistance of counsel. ***See***

Appellant's Brief at 3.

We begin with our standard of review.

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

***Commonwealth v. Benner***, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting

***Commonwealth v. Perry***, 128 A.3d 1285, 1289 (Pa. Super. 2015)).

> It is well settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Commonwealth v. Hanible***, [] 30 A.3d 426, 452 ([Pa. ]2011).

***Commonwealth v. Maddrey***, 205 A.3d 323, 328 (Pa. Super. 2019).

_____
*(Footnote Continued)* ―――――――――――

Appellant is represented by counsel, that filing is a legal nullity, which we do not consider. ***See Commonwealth v. Ali***, 10 A.3d 282, 293 (Pa. 2010).

<u>After-Discovered Evidence</u>

We first address Appellant's claim that the PCRA court erred in dismissing without a hearing his claim of after-discovered evidence, mindful of the following. To warrant relief, a petitioner must prove

> four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, this four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018) (citation omitted).

In his PCRA petition, Appellant claimed he was entitled to a new trial based on after-discovered evidence of a sworn declaration from Ragland, wherein he stated that he was not truthful during his trial testimony regarding the existence of a cooperation deal with the Commonwealth. Letter Brief, 9/8/2017, at 4. The sworn declaration provided as follows, in pertinent part.

> I, was a witness against [] Wilkerson and [Appellant] in April of 2003, before the Honorable Peter F. Rogers.

> During the trial, I was not being truthful, the defense counsel had asked me did I make a deal to testify against the defendants, and I said NO.

> Before trial the District Attorney instructed me, if I was asked about a deal to say no, when in fact I was receiving a deal for my testimony, and I was promised to be released after I testify [*sic*] and I wouldn't serve any jail time on my other charges.

*Pro se* PCRA Petition, 6/20/2013, at Exhibit A (Ragland's sworn declaration).

In dismissing Appellant's claim without a hearing, the PCRA court found that the after-discovered evidence would be used solely to impeach the witness's credibility at trial, and therefore did not warrant relief.[2]  PCRA Court Opinion, 10/22/2018, at 8.

On appeal, Appellant disagrees with the PCRA court, claiming that the evidence would be used to demonstrate that Appellant is not guilty. Specifically, Appellant argues as follows.

> Ragland was the primary factual witness offered against [Appellant] and if he had told the truth instead of lying, the Commonwealth would not have had a case to present or at least not the case that it in fact did present and the chances are that [Appellant] would have been acquitted if this key witness had not testified as he did.

Appellant's Brief at 7.

Upon review, we agree with the PCRA court's determination.  Notably, Ragland's declaration does not address the substance of his trial testimony. Rather, he only states that he lied about a cooperation deal with the Commonwealth.  Whether Ragland was offered sentencing leniency in

---

[2] Although timeliness is not an issue in this case and we need not address it, we do insofar as necessary to remind the PCRA court not to apply the after-discovered evidence test when determining whether the newly-discovered facts exception to the PCRA's time-bar has been satisfied. **Compare** PCRA Court Opinion, 10/22/2018, at 7 (applying after-discovered evidence test to newly-discovered facts exception) **with Commonwealth v. Burton**, 158 A.3d 618, 629 (Pa. 2017) (clarifying that "the newly-discovered facts exception to the time limitations of the PCRA, as set forth in subsection 9545(b)(1)(ii), is distinct from the after-discovered evidence basis for relief delineated in 42 Pa.C.S. § 9543(a)(2)").

exchange for his testimony at Appellant's trial affects his credibility, and therefore would be used for impeachment purposes. There is nothing in the declaration to suggest that the cooperation deal would be used for anything beyond impeachment, or that Ragland lied during any other part of his trial testimony. The PCRA court's conclusion that this evidence would be used solely for impeachment purposes is supported by the record and free of legal error, and the PCRA court did not abuse its discretion in denying a hearing. *See Commonwealth v. Choice*, 830 A.2d 1005, 1008-09 (Pa. Super. 2003) (concluding PCRA court did not err in dismissing PCRA petition without a hearing where after-discovered evidence was offered for impeachment purposes only). Accordingly, we conclude that the PCRA court did not err in dismissing Appellant's after-discovered evidence claim.

## Ineffective Assistance of Counsel

We next address Appellant's averment that the PCRA court erred in dismissing without a hearing his ineffective-assistance-of-counsel claim, mindful of the following.

> The law presumes counsel has rendered effective assistance. In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been

different. The petitioner bears the burden of proving all three prongs of the test.

***Commonwealth v. Postie***, 200 A.3d 1015, 1022-23 (Pa. Super. 2018) (*en banc*) (citations, footnote, and quotation marks omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

In his PCRA petition, Appellant claimed trial counsel was ineffective for failing to cross-examine Ragland adequately. ***See*** Letter Brief, 9/8/2017, at 2. Specifically, Appellant claims counsel failed to cross-examine Ragland as to (1) whether he walked into the bar with Appellant, as he testified to at trial, or whether he was already in the bar when Appellant arrived, as he had told police; (2) whether he could see what was happening in the car; and (3) whether he signed his out-of-court statement with an alias. ***Id.*** at 6-7.

In dismissing Appellant's ineffective-assistance-of-counsel claims, the PCRA court concluded that counsel's failure to cross-examine Ragland as to when he entered the bar did not warrant relief because it found there was "no reasonable probability that such a minor and insignificant inconsistency would have resulted in [Appellant's] acquittal." PCRA Court Opinion, 10/22/2018, at 14. Additionally, the PCRA court found that counsel adequately cross-examined Ragland as to whether he could see what was happening in the car and his use of an alias. ***Id.*** at 12-14.

Upon review of the record, we agree with the PCRA court's determinations. Specifically, whether Ragland walked into the bar with Appellant or was already in the bar when Appellant arrived has no bearing on the acts following Appellant's ejection from the bar and the shooting. Therefore, the PCRA court did not err in finding that Appellant had failed to establish prejudice as to this specific claim.

Second, counsel cross-examined Ragland as to whether he could see what was happening inside the car prior to the shooting. Consistent with his police interview, Ragland testified that he could not see inside the car, but that based on circumstantial evidence he believed that the gun he saw Appellant retrieve from the trunk of the car was the same gun that Wilkerson used to shoot at Ragland. *See* N.T., 3/14/2003, at 86-89. Likewise, counsel thoroughly cross-examined Ragland as to his use of an alias when he interacted with police following the shooting. *See id.* at 68-70. As such, the PCRA court did not err in finding that Appellant had failed to establish that these underlying claims had arguable merit. Additionally, the PCRA court did not abuse its discretion in denying a hearing on Appellant's ineffective-assistance-of–counsel claims.

Accordingly, we conclude that the PCRA court did not err in dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/19